# *14-1361*

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
## FOR THE SECOND CIRCUIT

ELIZABETH STARKEY,

*Plaintiff-Appellant,*

*-against-*

G ADVENTURES, INC.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR THE PLAINTIFF-APPELLANT

LAW OFFICES OF GERALD P. GROSS
*Attorneys for Plaintiff-Appellant*
*Elizabeth Starkey*
*366 Pearsall Avenue, Suite 5*
*Cedarhurst, New York 11516*
*(516) 371-2800*

Echo Appellate Press, Inc. • 30 West Park Avenue • Long Beach, New York 11561 • (516) 432-3601
Printed on Recycled Paper     20692

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

-----------------------------------------------------------------------------x

Elizabeth Starkey,

                     Plaintiff-Appellant,

        -against-

G Adventures, Inc.,

                     Defendant-Appellee.

-----------------------------------------------------------------------------x

# TABLE OF CONTENTS

**PAGE**

Table of Authorities ...................................................................................... ii

Introduction ................................................................................................. 1

Statement of Jurisdiction ............................................................................. 3

Statement of the Issues and Standard of Review ....................................... 4
    a.    Statement of the Issues ...................................................... 4
    b.    Standard of Review .............................................................. 4

Statement of the Case .................................................................................. 5
    a.    Introduction, pursuant to Local Rule 28.1(b) ...................... 5
    b.    Facts Relevant to the Issues Submitted for Review ............. 7

Summary of Argument ................................................................................ 12

Argument ................................................................................................... 13

Point I
    Plaintiff did not Assent to Defendant's Form
    Selection Clause .............................................................................. 13

Point II
    Assuming *Arguendo* that Plaintiff Agreed to the
    Forum Selection Clause, it is not Enforceable when
    Discretionary Factors are Taken into Account .............................. 19

Conclusion ................................................................................................. 21

# TABLE OF AUTHORITIES

**PAGE**

**Cases**
Blacklink Transp. Consultants PTY Ltd. V. Von Summer, 18

   Misc.3d 1113 (Sup. Ct. N.Y. Co. 2008) ....................................................20

Effron v. Sun Line Cruises, Inc., 67 F.3d 7 (2d Cir. 1995),
   revg 857 F. Supp. 1079 (S.D.N.Y. 1994) ...........................................13, 19

Erbe Elektromedizin Gmbh v. Canady, 545 F.Supp.2d
   491 (W.D. Pa. 2008) ............................................................................20, 20

Fteja v. Facebook, 841 F. Supp.2d 829 (S.D.N.Y. 2012) .............................16

Paisola v. GAP Adventures, Inc., 2012 U.S. Dist. LEXIS 42314,
   2012 WL 1026773 (S.D.N.Y. 2012) ...........................................................19

Ronan Assocs. v. Local 94-94 A-94B, 24 F.3d 447,
   449 (2d Cir. 1994) ..........................................................................................4

Shann v. Dunk, 84 F.3d 73, 77 (2d Cir. 1996), ................................................4

Specht v. Netscape, 306 F.3d 17 (2d Cir. 2002) ...........................................18

Starkey v. Gap Adventures, Inc., 2014 U.S. Dist. LEXIS 42461
   (S.D.N.Y. 2014) .............................................................................................7

United States v. Blue, 78 F.3d 56, 59 (2d Cir. 1996).......................................4

**Statutes**
Canada Courts of Justice Act Rule 131(1) ..............................................12, 20

N.Y. Civ. Prac. Law & Rule sect. 302(a)(3)(i) ................................................3

N.Y. Civ. Prac. Law & Rules sect. 5304.......................................................20

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
------------------------------------------------------------------X
ELIZABETH STARKEY,

                    Plaintiff-Appellant,

            -against-                                     14-1361

G ADVENTURES, INC.,

                    Defendant-Appellee.

------------------------------------------------------------------X

## INTRODUCTION

Plaintiff-appellant is Elizabeth Starkey, a New York resident who, on

September 6, 2011, booked a vacation tour to the Galapagos Islands,

Ecuador. The trip was booked with the defendant-appellee, G Adventures,

Inc., an adventure travel company. Ms. Starkey departed New York on

October 20, 2011, and was scheduled to return on October 30, 2011. On

October 26, 2011, on one of the islands, Ms. Starkey was sexually assaulted

by defendant's tour guide, Daniel. Prior to the assault, several other tourists

had voiced their concerns about Daniel's sexually aggressive behavior.

Plaintiff's civil suit, seeking money damages, was filed against G

Adventures in the Southern District of New York in October 2012. After

some, but not all, discovery was held, defendant, in July 2013, moved to

dismiss, on the ground that Ms. Starkey agreed to defendant's forum

selection clause, designating Ontario, Canada as the sole forum to litigate any dispute, which allegedly appeared in three computer-delivered communications transmitted by defendant to plaintiff – a "confirmation invoice", a "service voucher", and an email.  None of these three computer communications actually contained the forum selection clause, nor specifically reference it in some fashion.  Each computer communication instead had a hyperlink to "terms and conditions", and within those "terms and conditions" was the forum selection clause.

Plaintiff opposed the motion, arguing, *inter alia,* that she didn't agree to the forum selection clause.  In her opposing declaration, she said that she either read or skimmed the three computer communications, which said nothing about any forum selection clause.  She did not click onto the hyperlinks – which is probably typical for most travel consumers.  She said that it would be a financial and personal hardship for her to travel to Canada on multiple occasions to litigate her lawsuit.  She also said that she was concerned that under Canada law, she could be liable for defendant's counsel fees and costs should she not prevail in the lawsuit.

By opinion dated March 27, 2014, the District Court (Griesa, J.) granted the motion to dismiss.  Plaintiff timely filed a Notice of Appeal on April 23, 2014.

2

## STATEMENT OF JURISDICTION

Plaintiff pleaded that the District Court possesses diversity of citizenship jurisdiction, with the amount in controversy exceeding $75,000.00, pursuant to 28 U.S.C. sect. 1732 (complaint para. 3 at A7[1]).

Plaintiff is pleaded to be a New York resident (complaint para. 1 at A6).

The District Court has personal jurisdiction over defendant pursuant to N.Y. Civ. Prac. Law & Rule sect. 302(a)(3)(i), as defendant, an international adventure travel company, regularly does business in New York State (complaint paras. 4,7 at A7).

Further, the District Court has personal jurisdiction over defendant pursuant to N.Y. Civ. Prac. Law & Rule sect. 302(a)(3)(i), as defendant regularly solicits and advertises its business in New York State (complaint para. 5 at A7).

The relevant facts establishing District Court jurisdiction are that plaintiff booked a vacation trip with defendant, to the Galapagos Islands, Equador, in October 2011, and was sexually assaulted by its tour leader, Daniel (complaint paras. 8-17, A7-8).

---

[1] A refers to the Appendix.

3

## STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

### a.  Statement of the Issues

1.  Did plaintiff, a typical travel consumer, and defendant, an international adventure travel company, agree to a forum selection clause, agreeing to litigate all disputes in Ontario, Canada, where the clause only appeared within terms and conditions accessible by clicking onto a hyperlink that appeared in three computer communications transmitted by defendant to plaintiff that plaintiff never clicked on?

2.  Assuming, *arguendo,* that the parties agreed to the forum selection clause, is it enforceable, under applicable, binding case law principles?

### b.  Standard of Review

The standard of review is well stated in, Shann v. Dunk, 84 F.3d 73, 77 (2d Cir. 1996), as follows: "We review the district court's factual findings for clear error, and we consider *de novo* the court's conclusions of law. United States v. Blue, 78 F.3d 56, 59 (2d Cir. 1996). The central issue – whether, based on the factual findings, a binding contract existed -- is a question of law that we review de novo. Ronan Assocs. v. Local 94-94 A-94B, 24 F.3d 447, 449 (2d Cir. 1994)."

4

## STATEMENT OF THE CASE

### a. Introduction, pursuant to Local Rule 28.1(b)

Plaintiff-appellant, Elizabeth Starkey, was a typical travel consumer who, in September 2001, booked a vacation tour with the defendant-appellee, G Adventures, Inc., a company that does much business in New York, that is headquartered in Toronto, Canada. The tour was of the Galapagos Islands, Ecuador. The tour dates were from October 20 through October 30, 2011. While on the tour, on one of the islands, on October 26, 2011, she was sexually assaulted by defendant's tour guide, Daniel. In days prior to the assault, other female tourists had voiced their concerns about Daniel's sexually aggressive behavior. Plaintiff filed her civil suit for damages against defendant on October 19, 2012, where these allegations were pleaded in the complaint, A6-10. Three claims for relief were pleaded, under Canada tort law, New York tort law, and general American maritime law.

Defendant's Answer, dated December 12, 2012, at A11-21, denied liability, but as relevant here, admitted that it is a foreign corporation registered with the New York Secretary of State. Defendant admitted that it previously maintained a Manhattan office. Defendant admitted that it regularly does business in New York State. Defendant admitted that it

5

regularly solicits and advertises business in New York State. Defendant's
Answer also pleaded that venue was improper in the Southern District of
New York, because the parties had agreed to a forum selection clause
requiring that all litigation be held in the Ontario and Canada courts (Answer
paras. 4-7, at A12-13).

On July 5, 2013, defendant filed its motion to dismiss, after some but
not all discovery had been held (docket nos. 10-13), on the ground that the
parties had agreed to a forum selection clause, designating Ontario, Canada,
and that it should be enforced. The motion was supported by the declaration
of Saul Mandel, dated June 26, 2013, at A22-26, defendant's vice president
for risk management, which submitted into the record, three computer
communications transmitted by defendant to plaintiff in connection with her
trip: a "confirmation invoice", A27-29; a service voucher, A30-32; an email,
A33-35. None of these three computer communications made any reference
to a forum selection clause. Each of them only referred Ms. Starkey, and all
other travel consumers, to a hyperlink stating "terms and conditions" –
within those "terms and conditions" is the forum selection clause. The
"terms and conditions", including the forum selection clause, at para.32
thereof, are annexed as Exhibit D to the aforesaid Mandel declaration
(docket no. 12, #4).

6

Plaintiff filed opposition papers on July 26, 2013, which included but was not limited to, the declaration of Elizabeth Starkey, dated July 23, 2013; and which also annexed corporate documents proving that defendant is a Delaware corporation, registered as a foreign corporation authorized to do business in New York (docket no. 15).

On July 30, 2013, defendant filed the declaration of its employee Lyndon File, dated July 30, 2013, stating that the "terms and conditions" annexed to the Mandel declaration were those that were available by hyperlink on the three computer communications transmitted by defendant to plaintiff (docket no. 20).

By opinion dated March 27, 2014, the District Court (Griesa, J.) granted the motion, A38-46, holding that the forum selection clause was agreed to, and is enforceable.  See, <u>Starkey v. Gap Adventures, Inc.,</u> 2014 U.S. Dist. LEXIS 42461 (S.D.N.Y. 2014).   Notice of appeal was timely filed on April 23, 2014, A48.

b. **<u>Facts Relevant to the Issues Submitted for Review</u>**

The complaint, filed October 19, 2012, pleads in relevant part as follows:

> "10. That during the course of the tour, plaintiff and other vacationers were transported via boat to various islands.

7

11. That on one such island, plaintiff, on October 26, 2011, was sleeping in her room in a cabin. Other vacationers on this same trip were lodged in the same cabin. While plaintiff was sleeping, in the evening hours at such time, the other vacationers were drinking and eating elsewhere in the cabin.

12. That there was a tour guide employed by defendant, during this entire trip, whose name was Daniel.

13. That at such time, while plaintiff was sleeping alone in her room, feeling the after affects of sea sickness, Daniel trespassed into plaintiff's room, and attempted to and made sexual advances and assaults upon her. Plaintiff did not consent to these sexual advances and assaults.

14. That plaintiff managed to fend off the sexual advances and assaults upon her. Daniel left the room.

15. Subsequently, that same night, Daniel returned to plaintiff's room a second time, and made much more aggressive and invasive sexual advances and assaults upon plaintiff. Daniel was visibly drunk at such time. Plaintiff was very frightened that he would become physically violent. She tried to unsuccessfully persuade him to leave her alone. She was fearful that if she too firmly tried to fend him off, he would become physically violent. Finally, after more aggressive sexual advances and assaults, plaintiff was able to escape.

16. That plaintiff learned Daniel had made other sexual advances, without consent, upon other women.

17. That plaintiff suffered a ruined vacation trip, and has since undergone continued psychological therapy as a result of the sexual assaults." A7, 8.[2]

---

[2] Ms. Starkey, one month after the conclusion of her trip, sent a three-page, single-spaced letter to defendant, dated November 1, 2011, in which she detailed the sexual assault. On Isabella Island, the tour guide Daniel bit her, massaged her, put his hand in her underwear, touched her buttocks, lifted up her shirt, and unzipped his pants. See, Docket no. 15, Exhibit C to the Starkey declaration, which is page 13 of 25. The District Court referred to these facts in its decision, A40-41.

In moving to dismiss, defendant had one ground only, to wit, that in connection with plaintiff booking her tour with defendant, plaintiff received from defendant three computer-transmitted communications: a "confirmation invoice", A27-29; "service voucher", A30-32; email, A33-35. Each of these communications had a hyperlink to "terms and conditions". Clicking onto the link would have led plaintiff to the single-spaced ten page, 37 paragraph terms and conditions. Para. 32, at unnumbered pp.9-10 states:

> "32. APPLICABLE LAW
>
> The Terms and Conditions and Conditions of Carriage including all matters arising from it are subject to Ontario and Canadian Law and the exclusive jurisdiction of the Ontario and Canadian Courts." See, Docket no. 12 (Saul Mandel declaration, #4, Exhibit D).[3]

In her declaration dated July 23, 2013, opposing the motion to dismiss, Ms. Starkey, focusing on the jurisdictional and choice of forum issues, declared as follows:

---

[3] On the three-page "Confirmation Invoice", it is stated, in the same small size font as everything else on the page, "Confirmation of your reservation means that you have already read, agreed to and understood the terms and conditions, however, you can access them through the below link if you need to refer to them for any reason: http://gapadventures.com/media-server/static/documents/pdf/terms-condtions.pdf.", at A28. The three-page "Service Voucher", same font, has precisely the same text in two locations, at A31, and A32. The two-page email, same font, has slightly different language: "**TERMS AND CONDITIONS:** All tours are operated by Gap Adventures. All Gap Adventures passengers must read, understand and agree to the following terms and conditions: http://www.gapadventures.com/media-server/static/documents/pdf/terms-conditions.pdf?utm source=Pax3&utm medium=Pcom&utm campaign=Pax." A34.

"2. I grew up in Fort Myers, Florida. I attended private Catholic Schools from the elementary grades through high school graduation. I next attended and graduated the Atlanta College of Art and Design in Atlanta, Georgia. I am currently employed at Bravo TV in New York City. I currently reside in Astoria, Queens, NY, in a rental apartment. I am single, and I do not have any children.

3. In September 2011, I began to plan a long thought-about vacation, after doing some research on the Internet. I had always wanted to visit the Galapagos Islands, Ecuador. I booked a trip, I believe on the telephone through a toll free number, with G Adventures. In discovery proceedings in this case, I produced the service voucher and confirmation invoice that I received via email from G Adventures, and those documents are exhibits to defendant's motion. On or about October 20, 2011, I flew from New York to the capital, Quito, Ecuador. From there, I travelled with a group of about 10 persons, much of it on a boat travelling among the Galapagos Islands. The group was led by a tour guide named, Daniel, last name unknown, who sexually assaulted me on October 26, 2011.

4. The next day, talking to other tourists in the group, I learned that Daniel had, prior to my assault, been sexually aggressive and inappropriate with others. I learned of one episode where Daniel went into a girl's bathroom, and grabbed her in some inappropriate manner. On another occasion, Daniel boasted that he had once impregnated a tourist, and his youngest child was the result. He also made inappropriate comments about the females in our group.

5. I do not wish to have this lawsuit brought in Canada. It would be a financial and personal hardship for me to do so. I am of limited financial means, and I believe it would be expensive for me to travel to Canada for any and all pre-trial and trial activities there. I am also concerned about being potentially liable for defendants' counsel fees and costs in Canada, should I not prevail in the case there.

6. My therapist, Kathleen Jackson, also works and resides here in New York. She will be a necessary witness at trial. She cannot be compelled to appear in Canada at any trial there.

7. I understand that G Adventures is claiming that I am bound to a forum selection clause contained in a document entitled Terms and Conditions that was actually a link on the invoice and service voucher that was transmitted to me via email. As testified to at my deposition, I did not click onto this link. I read or skimmed the emails, which said nothing about any forum selection clause. I felt that if the link was important, the contents would have been in the actual email. I did not agree to any forum selection clause. I did not sign for it, nor agree to it in any other manner.

8. The invoice and service vouchers I did receive clearly stated G Adventures Manhattan address, and no other address.

9. I respectfully request that the motion to dismiss be denied." (Docket no. 15)

Reviewing the evidence, the District Court found that the hyperlink was sufficient to bind plaintiff to the forum selection clause. The District Court held that the hyperlink is a "reasonable form of communicating the 'Terms and Conditions' of a contract", A42.

The District Court also acknowledged that in evaluating the enforceability of a forum selection clause, "fundamental fairness" should be considered, A43. The Court, considering plaintiff's plea that it would be a

11

financial and personal hardship to litigate in Canada, rejected it, A44.[4]

However, the District Court did not consider plaintiff's expressed

concern that if she does not prevail in the Canada case, she could be liable

for defendant's counsel fees and costs. In Canada, loser pays, see, Canada

Courts of Justice Act Rule 131(1).

The District Court should be reversed. A hyperlink to a 10 page,

single-spaced, 37 paragraph document, containing a forum selection clause,

is not the type of reasonable communication, forming a traditional meeting

of the minds, that should be considered a binding contract, particularly

between a large international travel company, and a typical consumer.

Moreover, even assuming *arguendo* that it is binding, the forum selection

clause violates traditional norms of fundamental fairness.

## SUMMARY OF ARGUMENT

Plaintiff did not agree to the forum selection clause, which was not

reasonably communicated to her.

---

[4] Plaintiff also, in her counsel's memo of law in the District Court, argued that it would be unfair to dismiss the New York action, because if dismissal occurred more than two years after the assault, after October 26, 2013, plaintiff would be without a remedy since Canada has a two-year statute of limitations, Docket no. 16, plaintiff memo of law, p.12. See, Ontario Limitations Act of 2002, at sect. 4, and accordingly, plaintiff could not timely "re-file" in Canada. The District Court rejected this argument also, A44-45. This point has been mooted, however, because plaintiff, on October 23, 2013, filed a "backup" lawsuit in Ontario. Defendant's counsel herein has been so informed. That case is stayed. That case will be withdrawn if this Court reverses the District Court.

12

Even assuming that the forum selection clause is part of a binding contract between the parties, based on traditional norms of fundamental fairness, the clause should not be enforced.

### ARGUMENT

### POINT I

### PLAINTIFF DID NOT ASSENT TO DEFENDANT'S FORUM SELECTION CLAUSE

The District Court, citing two cases, held that plaintiff is bound by defendant's forum selection clause. Both cases are factually inapposite.

In Effron v. Sun Line Cruises, Inc., 67 F.3d 7 (2d Cir. 1995), revg 857 F. Supp. 1079 (S.D.N.Y. 1994), plaintiff was a cruise ship passenger who suffered an on-board accident, and filed a tort action in federal court in New York. Defendant's motion to dismiss, on the basis of a forum selection clause designating Greece, was denied in the District Court. This Court reversed. Whether the clause is binding, this court reasoned, is dependent on whether the clause was "reasonably communicated" to the plaintiff, 67 F.3d at 9.:

> "The legal effect of a forum-selection clause depends in the first instance upon whether its existence was reasonably communicated to the plaintiff. Although the district court made some critical comments about the makeup and form of Sun Line Greece's Passage ticket and contract, it did not hold that the ticket failed to reasonably communicate the existence of the forum-selection clause. The issue of reasonable notice is a

13

question of law. We address it de novo and hold that the existence of the forum-selection clause was reasonably communicated to the plaintiff.

The ticket at issue is comparable to a typical airline ticket. It consists of three double-sided leaves, each approximately 4" x 8 1/2 ". The warning "IMPORTANT NOTICE -- READ BEFORE ACCEPTING" is found in bold, capitalized, medium-sized lettering on the face of the ticket. Immediately below the warning, in somewhat smaller print, the ticket purchaser's attention is directed specifically to the contract clause that limits choice of forum. The forum-selection clause itself states in clear and unambiguous language -- albeit in fine print -- that all suits against the carrier must be brought in Athens, Greece. We have upheld provisions in passage contracts that were communicated in a manner similar to the forum-selection clause in appellants' ticket, and see no reason for a different result here." (citations omitted)

There are notable differences between the facts in Effron and those here. In Effron, it was undisputed that there was physical delivery of defendant's ticket to plaintiff, and that the ticket contained the forum selection clause. The only issue before this Court was whether the forum selection clause, contained within the ticket, was "reasonably communicated" to the plaintiff. This Court held it was, carefully analyzing the "warning" that appeared on the face of the ticket; the fact that the warning was bolded, all caps, and in medium-sized lettering; and that the text of the clause was clear and unambiguous in stating that all suits must be brought in Athens, Greece.

In the case at bar, *there was no physical delivery of the forum*

14

*selection clause to the plaintiff.* While the three computer communications were transmitted to plaintiff – the confirmation invoice, service voucher, and email - the actual clause does not appear within any of those communications. A hyperlink within those three computer communications is not a substitute for physical delivery. Physical delivery is a core attribute of the formation of a contract, while a hyperlink is not.

The District Court here essentially held that a hyperlink is equivalent to physical delivery, but respectfully, that is not the proper analysis. The proper analysis is to question whether the forum selection clause was "reasonably communicated" to plaintiff, and doing so requires careful attention to all factual particulars. Here, in none of the three communications to plaintiff did the actual forum selection clause appear. Further, even if one wanted to assume *arguendo* that a hyperlink is the functional equivalent of physical delivery, there was no bolded, all caps "WARNING". Additionally, the text of G Adventure's forum selection clause is not as clear and unambiguous as the clause in <u>Effron</u>.[5]

---

[5] The cruise ship's forum selection clause states, "Notwithstanding anything to the contrary contained herein, any action against the Carrier must be brought only before the courts of Athens[,] Greece to the jurisdiction of which the Passenger submits himself formally excluding the jurisdiction of all and other court or courts of any other country or countries which court or courts otherwise would have been competent to deal with such action." 67 F.3d at 8. G Adventures' clause states, "The Terms and Conditions and Conditions of Carriage including all matters arising from it are subject to Ontario and Canadian Law and the exclusive jurisdiction of the Ontario and Canadian Courts." See,

Effron actually sets a very high bar in this Circuit for enforcing a

forum selection clause, and the clause here falls well short.[6]

The second case cited by the District Court to support its holding that

the G Adventures forum selection clause is a binding contract is, Fteja v.

Facebook, 841 F. Supp.2d 829 (S.D.N.Y. 2012) which, again, is factually

inapposite. Defendant Facebook, the social media website, disabled the

account of plaintiff Mustafa Fteja, which plaintiff said was illegally

discriminatory. Facebook's motion to transfer to California, on the basis of

a forum selection clause, was granted. Addressing the issue of whether the

---

Docket no. 12 (Saul Mandel declaration, #4, Exhibit D). The cruise ship clause
encompasses "any action against the Carrier", while the G Adventures clause is limited to
the "Terms and Conditions and Conditions of Carriage", which requires the typical travel
consumer to wade through and somehow understand all of the legal jargon contained in
the balance of its 10-page, single-spaced, 37 paragraphs. Arguably, also, the G
Adventures clause, by referring the consumer to its "Terms and Conditions..." is
excluding tort cases, like this one, and is only referring to other terms among the 37
paragraphs (e.g., medical conditions at para. 3, deposits at para. 6, payments at para. 7,
cancellations at para. 9, etc.). The cruise ship's clause is also much clearer in "formally
excluding" any other competent courts; the G Adventures clause uses the legal term
"exclusive jurisdiction", which typical travel consumers probably do not understand.

[6]  In Effron, Judge Calabresi made it plain that he was uncomfortable in enforcing the
clause. He wrote a short concurrence, 67 F3d. at 11, saying that it "makes very little
economic sense" to uphold the forum selection clause, but he had to concur, based on
existing case law, and the application of that law to the facts of the case. The
concurrence states, "Were we writing on a clean slate, I would want to examine the issue
with great care before deciding whether we should do so". Judge Cedarbaum, in the
District Court, was also troubled, refusing to enforce the clause by reasoning, "It may be
fair to require a citizen of one state to sue in another, but it is fundamentally unfair to
require a citizen of Florida, who is injured on a cruise off the coast of South America, to
travel to Greece to sue the Greek shipowner, who does extensive business in the United
States., 857 F. Supp. at 1082.

16

clause was "reasonably communicated" to Fteja, which is the central

inquiry, the court described how consumers, like Fteja, became Facebook

users, *id.* at 834-835. First, Fteja gave certain personal information, and

clicked a "sign-up" button. Doing so took him to a new page, and a second

"sign-up" button, where it states, "By clicking Sign Up, you are indicating

that you have read and agree to the Terms of Service." The words "Terms

of Service" were an underlined hyperlink which took Fteja to the forum

selection clause, and additional terms.

Fteja is factually distinguishable for several reasons. There were

affirmative acts of assent, clicking onto two sign-up buttons, unlike the

circumstances existing here, where plaintiff was the passive recipient of

three computer-transmitted communications containing hyperlinks (which

plaintiff did not click). The Fteja court described the Facebook agreement as

resembling a "clickwrap" agreement, which requires users to click onto a

button which says, "I agree", or "Sign Up", or similar words clearly

communicating and constituting actual assent.

The Fteja court also discussed "browsewrap" agreements, "'where

website terms and conditions of use are posted on the website typically as a

hyperlink at the bottom of the screen'…..'(A) browsewrap license is part of

the web site and the user assents to the contract when the user visits the web

17

site'" (citations omitted), *id.* at 836.  In other words, unlike a clickwrap

agreement, a browsewrap agreement does not have any button to click on,

signifying assent.  In citing and discussing many reported cases, the Fteja

court observed that the courts which have enforced browsewrap agreements

do so where businesses, as opposed to consumers, are the users, and only

where the businesses are on actual or constructive notice of the hyperlinked

terms. *These circumstances are absent here.*  Elizabeth Starkey is a typical

travel consumer, and was not on notice, actual or constructive, of any of the

hyperlinked terms, particularly the forum selection clause.

    Specht v. Netscape, 306 F.3d 17 (2d Cir. 2002) (Sotomayor, J.), is

another leading case in this Circuit concerning the formation and

enforceability of computer-transmitted forum selection clauses.  There was a

clickwrap agreement in that case, involving a consumer's purchase of

computer software, but the key terms were "hidden below the 'Download'

button on the next screen, 306 F.3d at 34.  The arbitration clause was,

therefore, held not binding.  Specht thus maintains the high bar in this

Circuit for consideration of whether forum selection clauses are binding.[7]

---

[7] Specht also has a discussion of many reported cases, and not in one case is it held that a
binding contract is created under the facts here, *i.e.,* a typical consumer being the passive
recipient of three computer-transmitted communications.  See, also, Schnabel v.
Trilegiant Corp., 697 F.3d 110 (2d Cir. 2012) (terms-later email, purporting to require
arbitration of disputes, not binding).  Additionally, citing Specht as authority, the court in,
Edme v. Internet Brands, Inc., 968 F.Supp.2d 519 (E.D.N.Y. 2013), held that a

18

Given these legal principles, it is not surprising that G Adventures

has, previously, had its forum selection clause held to be non-binding by the

court in, <u>Paisola v. GAP Adventures, Inc.,</u> 2012 U.S. Dist. LEXIS 42314,

2012 WL 1026773 (S.D.N.Y. 2012) (giving much weight to plaintiff being

an American citizen, choosing an American venue to bring her case for

damages, as against a foreign company seeking to transfer the case to its

own jurisdiction, Canada).[8]

Under all of the facts and circumstances here, the forum selection

clause should be held to be non-binding, and the motion to dismiss denied.

### POINT II

**ASSUMING *ARGUENDO* THAT
PLAINTIFF AGREED TO THE
FORUM SELECTION CLAUSE,
IT IS NOT ENFORCEABLE WHEN
DISCRETIONARY FACTORS ARE
<u>TAKEN INTO ACCOUNT</u>**

After determining that plaintiff agreed to the forum selection clause,

the District Court next cited, <u>Effron v. Sun Line Cruises, supra,</u> for the

purpose of acknowledging that "questions of fundamental fairness" need to

---

browsewrap agreement, purporting to include a forum selection clause, was not
enforceable.
[8] The Magistrate's report in this case was adopted by the District Court Judge, see,
<u>Paisola v. GAP Adventures, Inc.,</u> 2012 U.S. Dist. LEXIS 42172, 2012 WL 1019585
(S.D.N.Y. 2012).

be taken into account for deciding whether the clause should be enforced, A43. In doing so, however, the District Court's analysis was inadequate.

The District Court overlooked a main point in plaintiff's opposition to the motion to dismiss, to wit, that if plaintiff is forced to litigate in Canada, and she does not prevail, plaintiff may, under Canada law, be liable for defendant's counsel fees and costs. Canada Courts of Justice Act Rule 131(1). A Canadian judgment against plaintiff can be enforced in the American courts, see, Erbe Elektromedizin Gmbh v. Canady, 545 F.Supp.2d 491 (W.D. Pa. 2008); Blacklink Transp. Consultants PTY Ltd. V. Von Summer, 18 Misc.3d 1113 (Sup. Ct. N.Y. Co. 2008); N.Y. Civ. Prac. Law & Rules sect. 5304. Plaintiff may lose this case in Canada, not necessarily on the merits, but because a Canadian court and its jurors may be biased against an American suing a Canadian company.

There are other discretionary factors militating against dismissal. Plaintiff, a single woman of limited financial means, should not be forced to travel a great distance, enduring more expense and time, see, Paisola, supra. Plaintiff's therapist, Kathleen Jackson, is in New York, and she cannot be compelled to appear in Canada to testify. It should not be forgotten also that plaintiff is a sex assault victim, and as a matter of policy, she should be granted the fullest discretion possible by our courts. Defendant, on the other

hand, is a large international company, which well has the means to defend itself anywhere in the world, particularly in New York. It also seems manifest that its forum selection clause is intended to discourage travel consumers like Ms. Starkey from bringing lawsuits against it. This is corporate misbehavior, it is unethical, and this Court should not be a vehicle for its approval. The motion to dismiss should be denied.

## CONCLUSION

The District Court should be reversed, and defendant's motion to dismiss denied, and this Court should grant such other and further relief as may be just and proper.

Dated: August 5, 2014

Respectfully submitted,

ELLIOT B. PASIK, Of Counsel
Law Office of Gerald P. Gross
Attorney for plaintiff-appellant
366 Pearsall Avenue, suite 5
Cedarhurst, NY 11516
Telephone: (516) 371-2800
efpasik@aol.com

**Federal Rules of Appellate Procedure Form 6.  Certificate of Compliance With Rule 32(a)**

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed.R. App. P.32(a)(7)(B) because:

☑    this brief contains  4,162                   words, excluding the
parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐    this brief uses a monospaced typeface and contains    [state the number of]
lines of text , excl uding the pa rts of the bri ef
exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the
type style requirements of Fed. R. App. P. 32(a)(6) because:

☑    this brief has been prepared in a proportionally spaced typeface
using [Microsoft Word                                       ] in
[14 font NY Times                    ], *or*

☐    this brief has been prepared in a monospaced typeface using
[ state name and version of word processing program  ] with
[ state number of characters per inch and name of type style ].

(s)    Elliot B. Pasik

Attorney for plaintiff-appellant

Dated: August 5, 2014